Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS with minor modifications the Interlocutory Opinion and Award and the final Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties in a pre-trial agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties stipulated that the sole issue for hearing before Deputy Commissioner Shuping on October 30, 1996 was whether the North Carolina Industrial Commission had jurisdiction over the claim pursuant to N.C. Gen. Stat. § 97-36(iii). Compensation issues were reserved for later hearing.
2. The plaintiff suffered an injury by accident March 8, 1994 in the course and scope of his employment as a truck driver for the employer. The employment relationship existed on that date. The injury was caused by a motor vehicle accident on I-95 in Florence, South Carolina.
3. Defendants commenced payment of benefits, purportedly under the Arkansas Worker's Compensation Act, subsequent to March 8, 1994.
4. Plaintiff contends his average weekly wage is $676.02 and his North Carolina compensation rate should be $450.63. Plaintiff contends he has suffered permanent disability and scarring. Plaintiff has not earned wages since March 8, 1994.
 *********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about September 20, 1993 plaintiff was employed by defendant-employer as an over-the-road driver, hauling general freight in interstate commerce, primarily in the twelve southern states, including North Carolina.
2. Arkansas is the principal place of business of defendant-employer Arkansas Trucking Services and its offices are located in Little Rock. The same company was begun as a separate trucking leasing company after its parent company, Continental Express, had purchased three other trucking companies in order to provide leased drivers to the two trucking companies that required them. One of those companies was Dallas Carriers of Rockwell, Texas, which had earlier leased its drivers from Drivers Systems, Inc. or DSI. Although DSI is no longer in existence, defendant-employer has continued to operate in DSI's name, in part because it had a number of pre-printed checks with that name on them and has continued to pay its drivers with those checks. Defendant-employer also continues to operate under the ICC franchise authority of Dallas Carriers, hauling general freight in interstate commerce in 48 states. Defendant-employer has 380 drivers, including more than three, but less than ten, who reside in North Carolina and whose principal place of employment is in North Carolina for the reasons more fully hereinafter stated. Consequently, defendant-employer is subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. For the last nineteen years plaintiff has been a resident of Dudley, North Carolina, which is located in Wayne County. At the time in question, plaintiff maintained a North Carolina commercial driver's license that allowed him to operate trucks throughout the United States. In response to an advertisement that defendant-employer had placed in a local Goldsboro paper seeking drivers, plaintiff contacted its Doraville, Georgia terminal, which was located outside of Atlanta and handled its southeastern hub that consisted of the twelve southern states, including North Carolina.
4. After receiving an employment application in the mail, plaintiff mailed it back to defendant-employer's Doraville, Georgia terminal and subsequently went there in September of 1993 for orientation and training. While at the same terminal on September 20, 1993, defendant-employer hired plaintiff as one of its drivers, responsible for hauling general freight in interstate commerce. The last act necessary to plaintiff's contract of employment occurred in the State of Georgia and thus his contract of employment was entered there rather than in North Carolina, which he does not dispute.
5. Plaintiff was assigned to operate out of defendant-employer's southeastern hub in Doraville, Georgia, that controlled the twelve southern states, including North Carolina. The majority of the time during his subsequent employment, plaintiff hauled freight in all those states, but on occasion drove outside them. Defendant-employer did not maintain a terminal in North Carolina, but, rather, dispatched its North Carolina drivers out of the Doraville, Georgia terminal. During business hours, plaintiff would contact his dispatcher at the Doraville terminal by telephone; and, after hours he would contact his dispatcher at his home for any dispatching information. Plaintiff would ordinarily be on the road for two weeks at a time before returning home; and, after two days home, would return to the road. When off the road, plaintiff kept defendant-employer's vehicle at his residence in Dudley and would be dispatched from there to begin his next route, after calling into his dispatcher at the Doraville, Georgia terminal or at the same dispatcher's home after hours. Because plaintiff did not regularly go to the Doraville, Georgia terminal, his checks were mailed to his residence at home. In order to prevent plaintiff from deadheading (driving one way with an empty truck), defendant-employer always attempted to have him pick up his first load in North Carolina as close to his residence in Dudley as possible, including pick-ups in Kinston, Durham, Roseboro and Charlotte, N.C. Similarly, the defendant-employer attempted to have plaintiff's last drop located in North Carolina as close to plaintiff's home as possible; and, presumptively, defendant-employer had similar arrangements with its other North Carolina drivers. Although plaintiff drove in all the other eleven southern states as well as outside of them occasionally, approximately eighteen-to-twenty percent of his stops were in North Carolina.
6. Although defendant-employer's principal offices and main terminal were located in Little Rock, Arkansas, plaintiff never went there during his period of employment. Plaintiff only went to a smaller terminal in Arkansas. Plaintiff's only other contacts with Arkansas were his pick-ups and drop-offs of freight in places such as Bentonville, Arkansas where Wal-Mart is located. Plaintiff similarly did not regularly go to defendant-employer's terminal in Doraville, Georgia, but did make pick-ups and deliveries in Georgia.
7. For all the foregoing reasons, plaintiff's principal place of employment was in North Carolina; and, as a result, the North Carolina Industrial Commission has jurisdiction over the admittedly compensable injury that he sustained in Florence, South Carolina on March 8, 1994.
8. Plaintiff's contract of employment that attempts to limit his rights to those under the Arkansas Workers' Compensation Act is in conflict not only with the provisions of N.C. Gen. Stat. § 97-36, which for the reasons stated in the above findings of fact vests the North Carolina Industrial Commission with jurisdiction over the involved injury, but specifically violates N.C. Gen. Stat. § 97-6, and is therefore unenforceable.
9. At the time of hearing before the Deputy Commissioner, plaintiff was 44 years old, married and the father of four children. He has a high school education, but has not since received any type of further formal education or vocational training.
10. Plaintiff was graduated from high school and can read and write; however, he failed one or two grades and now functions only in the borderline range of adult intelligence. Plaintiff had the degree of motor skills necessary to drive a long distance truck prior to the permanent closed-head injury which he sustained on March 8, 1994.
11. Although plaintiff's pre-injury (or pre-morbid) level of neuro-cognitive abilities were in the below-average range, based on his levels of academic and vocational achievement, plaintiff had adapted well to life prior to the date of his injury. Nevertheless, due to his lack of academic and coping skills, plaintiff's vocational abilities were already significantly limited prior to his injury.
12. While plaintiff has also farmed, operated a machine at Burlington Industries for a couple of years, and sold life and health insurance on a route in Wayne county for a couple of years; most of plaintiff's prior work experience has been over-the-road truck driving.
13. Plaintiff learned to drive a truck at Kemp Furniture, which is no longer in business, and drove for Kemp Furniture for six or seven years, hauling furniture in thirty-eight states. Plaintiff next drove for Billings Freight, hauling textiles in five or six states for six or seven years until he was terminated after being involved in a vehicular accident. Immediately prior to becoming employed by defendant-employer, plaintiff worked at Coble Dairy for three months, switching out tractors and trailers on its yard.
14. The admittedly compensable injury by accident giving rise hereto arose out of a March 8, 1994 motor vehicle accident in Florence, South Carolina in which plaintiff was thrown through the windshield of his truck, causing plaintiff multiple injuries, including, but not limited to, a severe closed-head injury which caused an intracranial hemorrhage into the ventricles — the pair of cavities located in the middle of the brain that produce the fluid that lubricates the brain; an abdominal contusion which tore the mesentery or cellophane-like material that holds the bowel to the abdominal wall; internal bleeding and associated obstruction of the small bowel which required an exploratory laparoscopy; a tear in the triceps insertion of the dominant left elbow; a fractured nose; injuries to the neck and low back, manifested by the neck, shoulder, low back and leg pain which plaintiff continues to experience when engaged in physical activity; and multiple cuts and contusions.
15. Due to plaintiff's severe head injury, he developed a seizure disorder which required him to be placed on Dilantin, the dosage of which has to be regulated in order to prevent episodes of Dilantin toxicity which produces side-effects that include difficulty in walking. Although plaintiff's potential seizures from Dilantin are now controlled, he remains at such risk that he is disabled from returning to his regular over-the-road truck driving job or other jobs working around heavy equipment or at heights that pose a risk of significant injury to himself or anyone else in the event of a seizure.
16. Plaintiff also suffers post-traumatic headaches as a result of the permanent closed-head injury which he sustained on March 8, 1994, manifested by chronic pain that prevents him from being able to load and/or unload cargo necessary to truck driving.
17. Due to the multiple injuries which plaintiff sustained, including his severe head injury, plaintiff became depressed, and because of his depression, developed pseudodementia, which resulted in his initially suffering severe impairment of cognitive function until he began receiving treatment for his depression in the form of tricyclic anti-depressant medication.
18. Although as a result of successful medication, plaintiff now only suffers from mild depression and is able to function, and his pseudodementia has improved such that he no longer suffers from severe impairment of cognitive function, plaintiff continues to suffer from mild impairment of his cognitive function to a degree which disables him from doing the planning or sequencing necessary to be an over-the-road truck driver or to perform other jobs requiring similar cognitive ability. As a consequence of the limitations arising out of plaintiff's severe head injury alone, and independent of any of the orthopedic or musculoskeletal injuries that he suffered in the automobile collision (including ones to his low back, neck and abdomen), plaintiff is limited to relatively sedentary work that does not involve much physical activity.
19. Accommodating plaintiff's limitations would require a custom-made job. Such a job still would not take into account the chronic pain that plaintiff continues to experience from his multiple injuries or the fact that prior to the same injuries plaintiff's vocational abilities were already significantly limited by his lack of academic and coping skills and that he has since been unable to cope with those injuries as evidenced by the somatoform pain disorder he has developed that contributes to his chronic incapacitating pain. Although plaintiff's condition has improved since his motor vehicle accident, for the reasons stated above, he remains incapacitated by the same injury and unable to return to work and earn any wages at this time in either his regular truck driving job or any other employment. Whether his condition will continue to improve, enabling him to return to the type of limited sedentary work that will only be available to him, is an open question at this time.
20. Even assuming arguendo that plaintiff did not suffer from chronic incapacitating pain, there is no evidence that the type of custom-made sedentary employment required by his permanent brain injury is currently available for someone of his age, education, background and work experience with the limitations that plaintiff has from his permanent brain injury, much less that he can obtain such work in an open and competitive labor market.
21. Based upon the I.C. Form 22 Wage Chart dated May 11, 1995 submitted by the employer, plaintiff earned an average weekly wage $626.60 at the time of his injury.
 *********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. For the reasons stated in the above findings of fact, at the time of his admittedly compensable injury plaintiff's principal place of employment was in North Carolina where defendant-employer regularly employed three or more persons. As a result, the North Carolina Industrial Commission has jurisdiction over the involved claim pursuant to the provisions of N.C. Gen. Stat. § 97-36.
2. For the reasons stated in the above findings of fact, the contract of employment that attempts to limit plaintiff's rights to those under the Arkansas Workers' Compensation Act is not only in conflict with the provisions of N.C. Gen. Stat. § 97-36, but specifically violates N.C. Gen. Stat. § 97-6, and is unenforceable.
3. As a result of his March 8, 1994 injury, plaintiff was and continues to be totally disabled, and has been unable to earn wages in any capacity since March 8, 1994, entitling him to compensation at a rate of $417.75 per week from March 8, 1994 to the date of hearing before the deputy commissioner and continuing at the same rate until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
 *********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer shall pay plaintiff, on account of his continuing total disability, compensation at a rate of $417.75 from March 8, 1994 to the date of hearing before the deputy commissioner and, thereafter, continuing at the same rate until further order of the Industrial Commission, subject to a credit for the workers' compensation benefits received in Arkansas. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee for plaintiff's counsel hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five percent of the accrued net compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly to plaintiff's counsel. For the balance of his fee defendant-employer, shall forward every fourth future compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendant-employer shall pay all reasonable and necessary medical expenses incurred or to be incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendant-employer shall bear the cost, including as part thereof an expert witness fee in the amount of $550 to Dr. John Gregg Hardy, who appeared by way of deposition and gave expert medical testimony herein.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
S/ _____ ____________ THERESA B. STEPHENSON DEPUTY COMMISSIONER